IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FRED AUSTON WORTMAN, III,             )
                                       )
    Plaintiff,                        )
                                       )       No. 3:20-cv-00156
v.                                     )
                                       )       JUDGE RICHARDSON
STATE OF TENNESSEE BOARD OF            )
PAROLE, *et al.*,                      )
                                       )
    Defendants.                      )

## **MEMORANDUM OPINION**

Fred Auston Wortman, III, an inmate of the Morgan County Correctional Complex in Wartburg, Tennessee, filed this pro se action under 42 U.S.C. § 1983 against the State of Tennessee Board of Parole ("Parole Board"), Gary Faulcon, Gay Gregson, Roberta Kustoff, Richard Montgomery, Tim Gobble, Zane Duncan, Barrett Rich, Rob Clark, Jim Purviance, Gayle Barbee, Richard O'Bryan, Mark Edward Davidson, Paul Hagerman, and f/n/u Stewart. (Doc. No. 1). Plaintiff sues the non-entity Defendants in their individual and official capacities. Plaintiff also filed a motion to participate in all proceedings by telephone. (Doc. No. 2).

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

### **I.**    **PLRA Screening Standard**

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and

1

summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II. Section 1983 Standard

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws...." To state a claim under § 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

## III. Alleged Facts

The complaint alleges that, less than week before Plaintiff's parole hearing, Defendant Freddie Sevier[1] conducted a risk needs assessment of Plaintiff. The results of that assessment

---

[1] According to the complaint, Defendant Sevier works at the Morgan County Correctional Complex. (Doc. No. 1 at 22). A reasonable inference can be drawn from the complaint that Sevier is a corrections officer. (*Id.*)

showed that Plaintiff had a low risk of reoffending and was an excellent candidate for parole release. Approximately twenty-four hours prior to Plaintiff's parole hearing, Defendant f/n/u Stewart[2] contacted Defendant Sevier "in order to pressure and influence Mr. Sevier to negatively change a risk assessment score that had been assigned to" Plaintiff. (Doc. No. 1 at 24). Immediately prior to the hearing, Defendant "District Attorney" Mark Davidson participated in a "closed-door, private, secret ex parte meeting with one or more members of the Parole Board for the purpose of influencing the Board to deny parole release" to Plaintiff "and to set off any review of [Plaintiff's] release as long as possible." (*Id*. at 25). According to the complaint, Defendant Davidson engaged in bribery during the meeting.

On September 19, 2019, the Parole Board held a hearing to determine whether Plaintiff would be released on parole. Defendant Gary Faulcon presided over the hearing. Unspecified members of the media attended the hearing. Defendants Davidson and Paul Hagerman[3] testified during the hearing and, according to the complaint, their testimony contradicted "written testimony in the form of the Alford Plea agreement entered into by Mr. Davidson and Mr. Hagerman on behalf of the State and [Plaintiff] and which was approved of by the victim and the court." (*Id*. at 26-27).

After less than five minutes of deliberating, Defendant Faulcon recommended that the Parole Board defer review until 2026, citing Tennessee Code Annotated § 40-35-503(b)(1) and (2). According to the complaint, Defendant Faulcon did not have time to meaningfully review the numerous documents submitted to the Parole Board as recently as the morning of the hearing. The complaint alleges that Defendants "produced an administrative proceeding that was subject to

---

[2] According to the complaint, Defendant Stewart is a "Board or TDOC employee." (Doc. No. 1 at 23).
[3] A reasonable inference can be drawn from the complaint that Defendant Hagerman is a state prosecutor. (Doc. No. 1 at 26-27).

bribery, undue influence, civil conspiracy, collusion, cover-up and interference with governmental operations." (Doc. No. 1 at 5).

Plaintiff received the written decision of the Parole Board on October 7, 2019. He filed an administrative appeal of the Parole Board's decision on or about November 18, 2019. As part of his appeal, he submitted discovery requests to the Parole Board. Defendant Rob Clark, counsel for the Parole Board, informed Plaintiff that his requests for discovery were denied.

## IV. Analysis

Plaintiff alleges that he has been improperly denied parole. He sues the Parole Board, individual Parole Board members, the attorney for the Parole Board, two state prosecutors, and two corrections officers. He is unclear about precisely what he is asking from this Court, if anything, beyond requesting in effect that the lawsuit go forward, proceed through discovery to a hearing, and then (with Plaintiff presumably victorious at the hearing) be "remanded to the administrative agency with instructions." (Doc. No. 1 at 36). What Plaintiff apparently seeks from this Court is a determination essentially that his parole proceedings were improper or invalid, plus a resulting remand to the Parole Board requiring it either to parole Plaintiff or at least re-do the proceedings in a proper manner. But there are numerous obstacles to the relief he seeks from this Court, and they prove to be insurmountable

First, a suit against the Parole Board is actually a suit against the state of Tennessee. *Pennhurst State Sch.. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). And, a suit against a Parole Board member in his or her official capacity is a suit against the state agency. *Hafer v. Melo*, 502 U.S. 21 (1991); *Ky. v. Graham*, 473 U.S. 159, 165–66 (1985). The Eleventh Amendment to the United States Constitution bars claims for damages against a state, its agencies, and its employees in their official capacities unless a state has a waived its immunity. *Quern v. Jordan*,

440 U.S. 332, 337 (1979), *overruled on other grounds by Hafer*, 502 U.S. at 27; *see Cowan v. Univ. of Louisville Sch. of Med.*, 900 F.2d 936, 940 (6th Cir. 1990) ("a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). Tennessee has not waived its immunity. *Berndt v. State of Tenn.*, 796 F.2d 879, 881 (6th Cir. 1986); *Gross v. Univ. of Tenn.*, 620 F.2d 109, 110 (6th Cir. 1980). Furthermore, a state is not a person within the meaning of section 1983. *Will v. Michigan*, 491 U.S. 58 (1989). Therefore, to the extent Plaintiff seeks damages from the Parole Board, the state of Tennessee, or any Parole Board member in his or her official capacity, such a request is barred by the Eleventh Amendment and does not fall within the purview of Section 1983. *See Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005) (dismissing damages claim against state parole board under the Eleventh Amendment).

The complaint identifies only Defendant Faulcon as a member of the Parole Board.[4] Defendant members of the Parole Board, including the parole hearing director, hearing officer, and parole administrator, are absolutely immune from damages liability. "[A] parole board is entitled to absolute immunity for activities related to 'the execution of parole revocation procedures.'" *Wright v. McClain*, 626 F. Supp. 1073, 1074 (W.D. Tenn. 1986) (citations omitted); *see Murray v. Miller*, No. 89-5506, 1989 WL 149987, at *1 (6th Cir. Dec. 12, 1989) (holding that "[t]he district court correctly concluded that the defendants are immune from suit for damages under 42 U.S.C. § 1983. Individual members of state boards uniformly have been found to have absolute immunity from suit for damages."); *Robinson v. Bd. of Paroles*, No. 88-6400, 1989 WL 68024, at *1 (6th Cir. June 23, 1989) (affirming district court's holding that suit for monetary damages against Tennessee Board of Parole members was frivolous). Thus, the complaint fails to

---

[4] It is unclear whether the attorney for the Parole Board is a member of the Parole Board.

state damages claims upon which relief can be granted under Section 1983 against Defendant Faulcon and any other Parole Board member in his or her individual capacity.

The complaint also names Gay Gregson, Roberta Kustoff, Richard Montgomery, Tim Gobble, Zane Duncan, Barrett Rich, Jim Purviance, Gayle Barbee, and Richard O'Bryan as Defendants. (Doc. No. 1 at 1). However, other than being listed as Defendants in the caption of the complaint, these Defendants are not mentioned in the narrative of the complaint or anywhere else in the complaint. A plaintiff must identify the right or privilege that was violated and the role of the defendant in the alleged violation. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 827 n.3 (6th Cir. 2005); *Dunn v. Tenn.*, 697 F.2d 121, 128 (6th Cir. 1982). Because Plaintiff does not allege the personal involvement of these Defendants in the events set forth in the complaint, Plaintiff has not established a basis for imposing individual liability on these Defendants. *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). Thus, Plaintiff's claims against Defendants Gregson, Kustoff, Montgomery, Gobble, Duncan, Rich, Purviance, Barbee, and O'Bryan in their individual capacities must be dismissed.

Plaintiff complains about the way his parole hearing was handled and asks this Court for non-monetary relief in the form of holding a hearing, permitting discovery, and an ordering a remand. (Doc. No. 1 at 35-36). Because Tennessee's statutory scheme places the decision to grant parole within the complete discretion of the parole board, inmates have no state-created liberty interest in parole. *See Seagroves v. Tenn. Bd. of Probation & Parole*, 86 F. App'x 45 (6th Cir. 2003); *Berry v. Traughber*, 48 F. App'x 483, 484 (6th Cir. 2002) ("Berry has neither an inherent constitutional right to parole nor a protected liberty interest created by mandatory state parole laws."); *Wright v. Trammell*, 810 F.2d 589 (6th Cir. 1987) (per curiam) (Tennessee law creates no liberty interest in parole). *See also Sweeton v. Brown,* 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en

banc) ("After *Olim* and *Inmates*, it became clear that procedural statutes and regulations governing parole do not create federal procedural due process rights.... The parole authorities in the State of Michigan may have been required to follow their own procedural statutes and regulations on parole as amplified in the consent decree as a matter of state law, but there is not now any viable legal theory by which Michigan state authorities are require to follow such procedural rules as a matter of federal due process.").

"Due process in parole proceedings is satisfied as long as the procedure used affords the inmate an opportunity to be heard, and, if parole is denied, the Parole Board informs the inmate of the basis upon which it denied parole." *Seagroves*, 86 F. App'x 45, 48 (citing *Greenholtz v. Inmates of the Ne. Penal & Corr. Complex*, 442 U.S. 1, 16 (1979)). Likewise, there is "no constitutional or inherent right of a convicted person to be conditionally released" on parole. *Crump v. Lafler*, 657 F.3d 393, 397 (6th Cir. 2011). Here, it is undisputed that Plaintiff received a parole hearing and the Parole Board denied parole to Plaintiff. Plaintiff does not allege that he was denied an opportunity to be heard during his parole hearing. As such, Plaintiff has no due process claims based on the parole hearing itself, the process leading up to his parole hearing, or the denial of his parole—no matter how improper or unfair they all allegedly were.

The complaint alleges that the Parole Board relied on an erroneous or doctored risk assessment score in denying Plaintiff's parole. However, "reliance on false information in a parole hearing does not constitute a violation of due process rights." *Jergens v. Ohio Dep't of Rehab. & Corr.*, No. 2:10-cv-01183, at **3-4 (S.D. Ohio June 13, 2011) (citing *Whiteside v. Ohio Dep't of Rehab. & Corr.*, No. 2:03-cv-00439, Doc. No. 49 at 13) (S.D. Ohio Mar. 31, 2004)) (where plaintiff was not challenging the outcome of his parole decision but rather the process that "unfairly determined the outcome," court rejected the claim, agreeing with *Whiteside* that a

7

prisoner has no right protected by due process to challenge the accuracy of information used by the parole board); *Reffitt v. Nixon*, 917 F. Supp. 409, 413 (E.D. Va. 1996), *aff'd*, 121 F.3d 699 (4th Cir. 1997) (*per curiam*) (explaining that a prisoner may not raise a claim under Section 1983 to contest information in his parole file because a prisoner does not have a liberty interest in being granted parole); *Washington v. White*, 805 F. Supp. 191, 193 (S.D. N.Y. 1992) (explaining that "[s]ince New York's parole provisions do not create an entitlement to parole ... any alleged unfairness in plaintiff's parole hearing does not and cannot afford a predicate for relief under Section 1983"). Plaintiff fails to state a claim upon which relief can be granted under Section 1983 here as well.

Plaintiff alleges that, despite the sentence specifying that he became eligible for release after serving 30% of his sentence, the Parole Board continues to deny him parole. (Doc. No. 1 at 10). He believes his plea agreement is a contract that requires the Parole Board to grant him parole now that he has served 30% of his sentence. However, there is no right under the Constitution to parole or early release. *Greenholtz*, 442 U.S. 1, 11. Tennessee law and regulations do not create a right to parole. *Wright*, 810 F.2d 589, 591. Tennessee Code Annotated § 40–28–117(a) states, in pertinent part:

> <u>Parole being a privilege and not a right</u>, no prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board is of the opinion that there is reasonable probability that if such prisoner is released he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society. If the board shall so determine, such prisoner may be paroled.

*Id*. (emphasis added). Section 40–35–501(a) states, in pertinent part: "An inmate shall not be *eligible* for parole until reaching his release eligibility date...." (emphasis added). By reaching the release eligibility date, as the name suggests, a prisoner becomes *eligible for* release, not *entitled*

8

*to* release. Thus, Plaintiff's plea agreement does not entitle him to an earlier release; the agreement simply recognized his release eligibility date. *See Hinds v. State of Tenn.*, 888 F. Supp. 854, 857 (W.D. Tenn.1995) (finding that plaintiff's plea agreement recognized his release eligibility date and "did not promise he would actually be released then.").

Plaintiff appears to sue two state prosecutors, Defendants Hagerman and Davidson, for their alleged roles in Plaintiff's parole hearing and their failure to abide by Plaintiff's plea agreement. However, these Defendants have no authority over the Parole Board's decision and, in any event, are protected by absolute immunity for their actions in negotiating the plea agreement under which Plaintiff was sentenced. *See Hinds*, 888 F. Supp. 854, 857 (citing *Imbler v. Pachtman*, 424 U.S. 409, 427–28 (1976); *Burns v. Reed*, 500 U.S. 478, 489–92 (1991); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir.1989); *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir.1986), *cert. denied*, 481 U.S. 1048 (1987)).

In Tennessee, decisions regarding parole are discretionary and are vested exclusively in the Parole Board. *Doyle v. Hampton*, 340 S.W.2d 891, 893 (Tenn. 1960). Therefore, the only vehicle for obtaining limited judicial review of a Parole Board's decision to deny parole is a common law writ of certiorari. *Stone v. Tenn. Bd. of Parole*, No. M201601730COAR3CV, 2017 WL 4217164, at *4 (Tenn. Ct. App. Sept. 20, 2017), *perm. app. denied* (Tenn. 2017). A common law writ of certiorari may be used "to remedy (1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; and (5) plain and palpable abuses of discretion." *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003) (citing *State v. Willoughby*, 594 S.W.2d 388, 392 (Tenn. 1980)). The Tennessee Court of Appeals explained:

> The scope of review under the common law writ ... is very narrow. It covers only an inquiry into whether the Board has exceeded its jurisdiction or [acted] illegally,

fraudulently, or arbitrarily. ... At the risk of oversimplification, one may say that it is not the correctness of the decision that is subject to judicial review, but the manner in which the decision is reached. If the agency or board has reached its decision in a constitutional or lawful manner, the decision would not be subject to judicial review.

*Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994) (citations omitted). *Id*. The court will issue a writ of certiorari where a prisoner makes a showing that there was a "fundamental irregularity in the Board's procedures" or that "the Board acted illegally, fraudulently, or arbitrarily." *Williams v. Tenn. Bd. of Prob. & Parole*, No. M2006-02336-COA-R3CV, 2007 WL 3132935, at *4 (Tenn. Ct. App. Oct. 26, 2007).[5]

The complaint is unclear as to whether Plaintiff has pursued or obtained a common law writ of certiorari. However, it is clear that this Court cannot hold a hearing to review the decision of the Parole Board or remand the matter "with instructions," as Plaintiff requests. (Doc. No. 1 at 36). This Court has no jurisdiction under Section 1983 to issue a writ of certiorari finding that the Parole Board acted illegally, fraudulently, or arbitrarily. *See Whipple v. Tenn. Bd. of Paroles*, No. 1:17-CV-148-RLJ-SKL, 2018 WL 1387066, at *7 (E.D. Tenn. Mar. 19, 2018) (dismissing plaintiff's claim in his amended Section 1983 complaint for an application for a writ of certiorari seeking judicial review of the parole board's decision to deny him parole).

Next, Plaintiff alleges that Defendants engaged in a civil conspiracy. But a §1983 civil conspiracy by itself does not constitute a separate cause of action. As recently explained by a district court in this circuit:

> "A claim for civil conspiracy under § 1983 exists only where the plaintiff has established a separate and actionable constitutional injury." Rapp v. Dutcher, 557 F. App'x 444, 450 (6th Cir. 2014)(citing Bauss v. Plymouth Twp., 233 F. App'x. 490, 500 (6th Cir. 2007)); see Wiley v. Oberlin Police Dep't, 330 F. App'x 524, 530 (6th Cir. 2009)("[Plaintiff] cannot succeed on a conspiracy claim because there was

---

[5] As the Tennessee appellate decisions make clear, if the prisoner is dissatisfied with the ruling of the lower state court on his request for a writ, he or she may appeal to the Tennessee Court of Appeals.

10

no underlying constitutional violation that injured her."). Having dismissed the individual panel members because [the plaintiff] has not sufficiently alleged that they violated its due process rights, [the plaintiff's] conspiracy claim against them also fails.

*PB&J Towing Serv., I&II, LLC v. Hines*, No. 2:18-CV-2556, 2020 WL 236745, at *8 (W.D. Tenn. Jan. 15, 2020). The same applies to the instant case; because Plaintiff has failed to state a claim against any of the defendants for a violation of his constitutional rights, Plaintiff's §1983 civil conspiracy claim against them also fails.

Alternatively, "[e]ven if there were a 'separate and actionable constitutional injury,' the Court would dismiss the conspiracy claim because PB&J Towing has not alleged sufficient facts to support it. The Sixth Circuit has defined a civil conspiracy under 42 U.S.C § 1983 as follows:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not know all of the details of the illegal plan or all of the participants involved. All that must be shown is that there is a single plan, that the alleged co-conspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985).

Conspiracy claims must be pled with a degree of specificity. *Hamilton v. City of Romulus*, 409 F. App'x 826, 835-36 (6th Cir. 2010). Vague and conclusory allegations unsupported by material facts are insufficient, although circumstantial evidence of an agreement among all conspirators may provide adequate proof. *Id*.

Plaintiff's allegations of a civil conspiracy between two or more Defendants are too vague and conclusory under *Hooks*, 771 F.2d 935, 943-44, and *Hamilton*. 409 F. App'x 826, 835-36. The Court finds that Plaintiff's allegations of a civil conspiracy do not survive the PLRA's screening, and any such claims will be dismissed.

The complaint also alleges that some or all Defendants engaged in activity in violation of state criminal statutes, such as fraud and bribery. To the extent that Plaintiff asks the Court to initiate criminal charges against these individuals on behalf of Plaintiff, the "[a]uthority to initiate a criminal complaint rests exclusively with state and federal prosecutors." *Tunne v. U.S. Postal Service*, No. 5:08CV-189-R, 2010 WL 290512, at *1 (W.D. Ky. Jan. 21, 2010) (quoting *Sahagian v. Dickey*, 646 F. Supp. 1502, 1506 (W.D. Wis. 1986)). Private citizens have "no authority to initiate a federal criminal prosecution of the defendants for their alleged unlawful acts." *Williams v. Luttrell*, 99 F. App'x 705, 707 (6th Cir. 2004). This Court lacks jurisdiction to initiate any investigations of alleged criminal activity upon request of Plaintiff.

## V. Conclusion

As explained above, the complaint fails to state a claim upon which relief can be granted under Section 1983, and this action will be dismissed. This dismissal is without any prejudice to Plaintiff's ability to seek any relief that may be available to him by way of a habeas corpus filing.[6]

Because this case will be dismissed, Plaintiff's motion to participate in all proceedings by telephone (Doc. No. 2) will be denied as moot.

An appropriate Order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[6] Although Plaintiff refers to himself as "Petitioner" and to Defendants as "Respondents," he paid the $400 filing fee for civil actions, not the $5 filing fee for habeas corpus actions. (Doc. No. 5). Moreover, Plaintiff does not request release from confinement, a remedy typically requested in habeas proceedings. (Doc. No. 1 at 35-36). So the Court does not purport to have passed herein on the propriety of habeas relief for Plaintiff. But habeas relief, like relief under Section 1983, seems unlikely for the kinds of grievances Plaintiff has set forth in this Section 1983 action. *see,e.g., Leggs v. Genovese*, No. 3:16-cv-02069, 2017 WL 6507972, at *6 (M.D. Tenn. Dec. 20, 2017) ("Because Tennessee law does not provide any substantive liberty interest in parole, Petitioner has no basis for any habeas challenge to the Board's parole decisions or the procedures surrounding them.") (citing *Settle v. Tenn. Dep't of Corr.*, 487 F. App'x 290, 291 (6th Cir. 2012)) (citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) and *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir.1994) (en banc)).